Good morning, Your Honors. My name is Matthew Robles-Sago. I'm here for the petitioners. Thank you for this opportunity. Speak right up. Yes, Your Honor. Your Honor, this case has its genesis in a crime committed against the petitioner's child. She was 16 years old when she became involved with a man who was 28 years old, stuck around long enough to get her pregnant, and leave her with a child that she was ill-equipped to care for herself. As a result, the parents of this child, of their daughter, have raised the child as if it was their own. They have guardianship over the child. Their daughter has also given them, in written format, a document which gives them legal custody for all purposes, educational, health, et cetera. So for all practical purposes, they are the parents of this child. What's the age of the child? The age of the child is now 14, Your Honor. I think as a backdrop, we should remember that, as this Court has said, that the Immigration and Nationality Act was intended to keep families together, and it should therefore be construed in favor of maintaining family units. In this case, we're arguing that this child qualifies as a child because he meets the definition of an orphan under 101A.B.1, subsection F. What's your best case in support of your position here? I think the matter of Greenwood is probably the Board decision. That Board decision, I think that Board decision is very significant because in that decision, the Board said classification as an eligible orphan does not mandate the subsequent completion of the intended United States adoption. As a result, I think we need to remember that the orphan definition has two components. There's the determination of whether the child is an orphan, and then there's the rest of it, which pertains to the visa petitioning process and the adoption process. In this case, the petitioners are unable to adopt this child because they're both here unlawfully. They've both consulted attorneys, tried to do it, and it's not possible for them to do that until they get status. Is there any case that says that an orphan within the meaning of the statute that you just referred to includes a noncitizen custodian, if you will, putative parent and a grandchild? I did not find any cases that are directly on point that deal with those specific relationships. Is the statute limited to the circumstance of U.S. citizens adopting noncitizen children? Well, Your Honor, I think that misses the point. Can you start with a yes or no? Yes. I mean, it's true. I mean, the definition does require that it be a U.S. citizen intending to adopt a child. That is true. But I think that misses the point because what we're trying to do is establish that this is a child for a qualifying relative under the cancellation statute. And we're not trying to file a visa petition. And if you think about it, in every single case, there's a child that's a qualifying relative that would never be able to be petitioned for by the petitioners, i.e., the aliens that are in removal proceedings. I mean, it's always a child that's a U.S. citizen, so why would you try to file a petition for a U.S. citizen child? I think the point is that it's a term of art with many different definitions. And we're arguing that we meet one of those definitions. And as a ---- They have adopted the child? They have not adopted because ---- Let me finish the question. I'm sorry. If they had adopted the child, successfully completed the process of adoption, would this be a different situation? I think it would make it a stronger case for the petitioners, but it still wouldn't bring them within the definition here because they're not U.S. citizens. So, of course, they're not able to adopt this child and, therefore, complete the procedure for an orphan petition. And so in addition ---- Could they adopt a child in their home country and then bring the child back? Is that possible? Well, I mean, that would require them to basically invoke the 10-year bar because they would leave their hearing lawfully and then they'd have to come back. They'd need to get a waiver to come back in. And so that's not really an option. It's not feasible. It's not feasible, Your Honor. Because the father of this child abandoned the child and disappeared within the first year of its life, he's not considered a parent under the INA. 101B2 says that a natural father is not considered a parent if he's abandoned the child. So that's out of the picture. So if we take a look at the definition of an orphan, there's two components for the determination of whether it's an orphan. There's a two-parent component and a single-parent component. When were they served with the order to show cause? I don't have the exact date, Your Honor, but I think it was 1999, May of 1999 approximately. So how many years from the time that they took custody of the child or took responsibility for the child until the notice was served? How much time elapsed? Let's see. So the child was born in 1993, so I guess it would be about six or seven years, something like that. During that period of time, could they have adopted the child? No. They tried to adopt the child. No, because they're both here unlawfully. They have no status. They were not able to adopt the child. No, Your Honor. And to a noncitizen, cannot use our courts for adoption purposes? A noncitizen could, but I think it would have to be in conjunction with we've accomplished this in other cases where there is a citizen involved, so that there's some, I guess, some consolation to the agency that the child is not going to be deported along with the parents or something. Currently residents of what State? California. California, Your Honor. And you're telling the Court that as a jurisdictional matter, California courts require mother and father seeking to adopt a child to be U.S. citizens? I can't answer that definitively, Your Honor. It's a pretty fundamental question, isn't it? Well, see, they have attempted to. They've sought counsel, separate counsel, for that issue, and they were told that they could not adopt the child because both of them were here unlawfully. But if they were lawfully here, maybe they could. Yes, that is true, Your Honor, absolutely. But, of course, they can't get here lawfully under the, in the situation that they're in because it's a cancellation case, unless they have a qualifying relative, so it's like a catch-22. And so this child has, the surviving parent of this child does meet the definition of an orphan because she is incapable of providing the proper care and she has in writing irrevocably released the child for immigration and adoption. So we're saying that because this child meets the definition of an orphan, he should be considered a qualifying relative for purposes of the cancellation statute, bearing in mind that it's an ameliorative statute that should be construed broadly to effectuate his purpose. Of course, the cancellation statute had the effect of narrowing relief to those who could meet its daunting hardship standard, but it still maintained the emphasis on maintaining family unity by focusing on the hardship to those three elements, parent, spouse, or child, bearing in mind that there are also terms of art that have a broad definition. Both the board and the IJ took a simplistic approach. If you don't have a child, then it's black and white and sober. But the mere fact that you don't have a biological child doesn't mean that you don't have a child under the Immigration and Nationality Act as defined under the very many definitions of a child in 101B. So as any court of appeals ruled on this issue. Not that I'm aware of, Your Honor, no. I mean, there are some cases that say a grandchild is not a qualifying relative. That's clearly the case. We're not arguing that a grandchild is a qualifying relative. We're simply arguing that under these factual circumstances, this child satisfies the definition of a child for purposes of cancellation of removal. Do you want to save some time? Yes, Your Honor, I will. Thank you very much, Your Honor. Thank you for your argument. We'll hear from the Attorney General at this time. Good morning, Your Honor. Immanuel Pallavi for the Attorney General, the Respondent. At the outset, Your Honors, I would like to point out that there is no jurisdiction here to address this orphan argument because the Petitioners here failed to exhaust their remedies. They never presented this issue to the Board. Below, before the IJ, they argued solely that the grandchildren were de facto or functional children of the grandparents. That argument was properly rejected. On appeal to the Board, again, the sole issue was the de facto child issue. That was rejected. Here, for the first time, the Petitioners argue that the childhood issue is, in fact, an orphan under the INA, and it is black-letter law that you must first exhaust your administrative remedies before the Board, before you can present an issue like that to the Court. Isn't that argument almost implicit in what they were arguing below? Not at all, Your Honor. We're talking about the INA definition of child. So to the extent we're talking about a definition, fine, but their argument was very specific below, and that was because we've treated this child as our own, he is a de facto or functional child, and that argument was expressly rejected by the Supreme Court in the Hector decision. Here they're saying, forget what we said below. Now this child is an orphan. Another very specific definition, and I would strenuously dispute the characterization that the term child is a term of art. As the Supreme Court said in Hector, Congress has very specifically and rigorously defined in the INA what a child is. Congress has the authority to draw the lines here, and there were the consequences of differences of the distinctions in the definition, and they've, in fact, fine-tuned that definition over the years. And what the Supreme Court said in Hector was, given the precision with which Congress has defined this term, it is not for the courts to expand that definition. They're going to follow the plain, clear meaning of the definitions established by Congress. Can you cast any light on the question I asked Petitioner Counsel, and that is whether California, as a matter of law, requires a couple seeking adoption to be citizens? I'm sorry, Your Honor, I can't. To me the issue is, I believe the orphan issue, frankly, is irrelevant, because even if you can somehow shoehorn this child into that definition, the fact remains that the Petitioners here are not the parents of that child and have not and apparently cannot adopt that child. In fact, it would have had to have happened by now, of course. The Petitioners here are not the adoptive parents of the child at issue, and under the INA's very clear and plain definition, he simply does not qualify as a qualifying relative for cancellation of removal purposes. So if they could adopt, then the child would be a child under the law. Your Honor, I'm sorry. Your Honor, if they could and did, you know, if they had adopted, yes. Because the INA specifically allows an adopted child to be considered a child for purposes of relief from removal here. But that simply hasn't happened. And I would submit even if the Court could consider the argument here, had it been exhausted, we would, first of all, argue it doesn't fit whatsoever. It's clearly, as I believe Judge Hawkins suggested, the orphan definition is intended to reach situations where the adoptive parents are trying to adopt a child who's living abroad and bringing the child to the U.S. to be adopted. Here, the child is a U.S. citizen, president in the U.S. It simply does not fit. But even if it did, again, the fact remains he is not the adoptive child of the petitioners here and just cannot meet the very clear language of the definition that Congress established. Do you know of any certain cases that has ruled on this very issue? The orphan issue, Your Honor? No. There are a few cases cited in the brief. But I would suggest that the two cases cited in the petitioner's brief both involve children who are a resident in a different country who were sought to be brought to the U.S. to be adopted by parents here. Right. That's your position, that that's the purpose of that statute? Yes, Your Honor. So in the first instance, I believe this Court does not have jurisdiction to decide the orphan issue raised by the petitioners here and that the petitioner should be dismissed on that basis. Secondly, if the Court did have jurisdiction, we would argue that the child at issue simply does not fit the definition of even an orphan, and even if that child did, that that would not render the child a qualifying relative for purposes of petitioners' request to get relief in the form of cancellation or removal. That being the case, we would ask the Court to dismiss the petition for lack of jurisdiction. That concludes my argument. If you have further questions, I'm happy to try to answer them. I don't see any. Thank you for your time. I have one question. My understanding is that frequently the government doesn't pursue actually physically deporting people after we've ruled. Do you have any ideas as to why this happens and why it doesn't happen? Would this be a circumstance where they would just decline to actually execute on the deportation order? I'm sorry. As to the petitioners here? Uh-huh. I don't know the answer to your question. I'm not sure how it – I'm missing how it fits here. I'm just asking a practical question. I'm sorry. I don't have the answer. I don't want to mislead you. I don't have the answer to that question, why deportation does not occur. I suspect the answer would be if that's the case, that either lack of resources or time or inability to locate the aliens in order to be deported, things like that. But that's my best guess. So the government doesn't do it because it has a heart? I'm sure – I wouldn't exclude that possibility, Your Honor. Okay. Thank you, Your Honor.  Thank you, Your Honor. Just a couple of things. First of all, the Hector decision that the government cites to is inapposite. It has nothing to do with this case because in that case specifically, in fact, the court actually said the petitioner has never claimed in the court of appeals did not hold that the two nieces qualify under the statutory definition. And so that case stands for the unremarkable proposition that you don't have to consider hardship to third parties other than parent, spouse, or child. We're arguing that we do meet the definition of a child, so that case has nothing to do with this. And furthermore, under exhaustion, we clearly exhausted the issue, but ultimately it comes down to how you define the issue. At what level of extraction do you use it? I mean, if you look at page 62 of the record, the judge, the immigration judge said, I've heard your counsel's argument on the record. There's an argument that it's about the legal interpretation of what a child is. That is the issue, and that is the issue before us, and we have exhausted it consistently. And I would remind the court that in the en banc decision, Sokov-Gonzalez v. INS, the petitioner didn't raise equitable tolling, the actual issue, until oral argument at the en banc panel. So if we can find a way to do it there, then certainly we can find a way to do it here. And even if it wasn't exhausted, there's still an exemption. Alkraz v. INS said that if the government is not prejudiced, then there's no harm. And in this case, the government was on notice in our opening brief, the same facts as Alkraz. So I think we have exhausted the issue. Of course, if you want to define it very, very, very narrowly, then why even bother requiring briefs? Why not just identify the standard of review and then look at the briefs that were submitted at the board? Because, I mean, that's the end game. Okay. Thank you, Your Honor. Appreciate it. This argument will be submitted for decision.
judges: B. Fletcher, Siler, Hawkins